I'm Stephanie Simpson. This case involves two main issues, disability under the Social Security Act and an overpayment. Now regarding the Social Security disability, the claimant was hospitalized for a severe mental impairment in 1995 and she was paid benefits until about 2001 when she started to do some part-time work and they found that it was substantial gainful activity. Ms. Simpson, let me ask you a question. Now your client had been diagnosed as a schizophrenic, right? Yes. Okay. Now if you're diagnosed as a schizophrenic and she was determined to be disabled at one point, is it your position that that means for the rest of her life, because she has schizophrenia, she's entitled to be determined to be disabled? Or can they revisit that? I don't understand what your honor means. Well, just because you're disabled on one date and you have schizophrenia, does that mean they can't look at it later? Or can they look at it later and see if you're still disabled? They can keep looking at it all the time. Okay. And this is what they did. So that's okay for them to do that, even though she has schizophrenia? Yes. Which isn't curable, I guess. Yes. If she does what they call substantial gainful activity, then the impairment doesn't enter into it, because she is doing substantial gainful activity, even though disabled. Okay. So when they looked at it again, there were a number of doctors that the ALJ and the district court looked at the reports, right? Yes. Okay. And they didn't all agree? No. So why isn't this a situation where they just looked at them and said, and believed one more than the other because of, and gave reasons for why they thought this doctor was correct and the other one was wrong? Why isn't that enough under the standard of review? Not during the period when she was earning what they call substantial gainful activity. The fact that she had this severe impairment would not enter into it. Now, she didn't know that, because she did just part-time work. But the part-time work she did did meet what they call substantial gainful activity. Okay. But the doctor you wanted them to follow was Dr. Walker? Yes. He was from Kaiser. Okay. But why was the court wrong when it said that what Dr. Walker said wasn't as convincing as what some of the other doctors said, or the fact that she had worked during that time? Why couldn't the court look at all of that? He just, what the ALJ did is almost completely ignored the severe mental impairment. But it is true that if you have a severe mental or any severe impairment and you do what is called substantial gainful activity, you're not entitled to disability benefits. And this is what happened in the overpayment. Okay. But Dr. Walker should be considered a treating physician. What he did is he examined her. He got her history. And based upon his training and experience, he came to the conclusion that she suffered from schizophrenia. And she also has, he did call an orthopedist. The orthopedist did testify at a hearing that her physical impairments met a listing in a mild manner. She subsequently suffered from inability to walk properly. Therefore, it would appear that her schizophrenia meets listing 1203 or 1204, and that her inability to walk properly, ambulate properly, would equal 102A. Counsel? No, I haven't gone into the overpayment. It looked to me as though the administrative law judge who wrote the decision that you're challenging did not have before him the full record of the favorable decisions that Dervin had obtained previously, either after her mental hospitalization in 1995 or her favorable decision in 2001. She won in 2001, didn't she? Yes. Were those records there, and were they overlooked, or were they not there? The decision that you challenged doesn't seem to reflect what was in those records, and I don't understand why not. It's just they didn't have proper records. We did have four hearings in the matter. So the first one, there wasn't too much evidence. But then we had a second, third, and fourth hearing where Dr. Walker's reports were submitted to the judge, and he almost completely ignored them. So he did have before him Dr. Walker's records, or he didn't? Yes. At the second, third, and fourth hearings, he did have them. What about this? Did he have this disability hearing officer's decision from November 2001 where I noticed that the hearing officer in the case that you challenged says that she didn't follow the decision of Dr. Bogner, not the decision of Dr. Bogner, his advice that one reason for her not being disabled is she has no hallucinations. But in this 2001 hearing officer's decision, there's a finding of fact that she does have hallucinations. And I don't understand. Did the hearing officer later not read what the hearing officer earlier said, or what? I would say that she, that her severe mental impairment, according to the evidence, was continuous, even though she was cut off because she worked. But she still had the severe mental impairment. Now, she never held a full-time job after 94. These were all part-time jobs, a couple days here, a couple weeks here. It's like she'd get a temp job and she'd get fired, basically. Is that about right? Yes. She's... Or not called back. Yes. All along, she has complained that the people, her neighbors, talk to her through the floor and ceiling, and that the outer environment affects her concentration. Now, at the last hearing, when I requested the vocational expert to tell me whether or not to answer, I stated, if a claimant must lie down about two times during the day for about an hour each time, would she be able to do any of the jobs that they mentioned? And the judge cut off the hearing at that point and said, the hearing is closed. In other words, she just didn't seem to care about investigating the severe mental impairment or any of the things of this claimant. Now... On the waiver, on the waiver issue... Pardon? On the waiver of overpayment issue, there was a finding that your client was at fault because she knew or should have known that she wasn't entitled to the benefits. My first question about that is, what is the standard of review? Given that that's a legal determination, the substantial evidence standard goes to the factual part. It seems to me to be a mixed question of fact and law. Well, they hospitalized her because of manic depression. That was it. And what Dr. Walker wanted for her to get therapy on psychosis and stabilization. So he wanted to help her. So he would be a treating physician. Now... Are there any... It looked to me like Dr. Walker really did not personally treat her, but he was a psychiatrist at Kaiser Permanente, which had treated her for years. And I gathered from the way he wrote his report that if you're a Kaiser Permanente patient, you just get bounced around from one doctor to another. Have I got that right, factually? Well, she did go to Kaiser. He did examine records at Kaiser. He personally examined her, getting a history and so forth. And then based upon his training and experience, he recommended treatment for her. So therefore, he would be called a treating physician, even though he was at Kaiser. Yeah, Kaiser is a place where you don't necessarily get the same doctor every time. Pardon? Is it true that Kaiser is a kind of hospital where you don't necessarily get the same doctor every time? Well, I don't care for reports from Kaiser. I don't think they're as well written as they should be. But Dr. Walker did examine her, and he is a psychiatrist, a medical doctor, and he came to that conclusion. May I go on to the overpayment, Your Honor? We've consumed all the time, but of course we've read your briefs and the record excerpts on the overpayment. So it's certainly fully argued. Oh, I was just going to say that. Unless my colleagues want to hear more. Okay. I was trying to inquire about the standard of review. Is this a mixed question of fact and law? About what? That whether or not she was at fault, as defined in the statute. Oh. Well, a false according to the Social Security Administration. She provided all material information. She didn't give any evidence which was incorrect. And she thought she was entitled to all the benefits. Now, I request that ---- Well, but the judge found against her on some of that. I think that's what Judge Wardley said, that she didn't report until they would keep calling her up and saying, you know you have to tell us when you're working and you're not doing that. And then she would say something and then they would have to tell her again. So the judge didn't believe her about everything, did the judge? They did not believe her, no. But she did do the best she could.  And even though I requested a subpoena, he refused to send a subpoena and get all records because they notified her in June 2000 that they were going to cut her off. And they didn't cut her off until September 2002, which is about 26 months later. And so that added to it. And based upon the Ninth Circuit's case in Quinn Living, that there should be availability of the waiver. And if the records are based upon a claimant's evidence, it would appear that based upon the evidence of the record and considering Quinn Living, that waiver should be granted on the overpayment. Thank you, counsel. Thank you. Thank you. Counsel, I have to go ahead. May it please the Court, my name is Susan Smith and I am here representing the Commissioner of the Social Security Administration. I have a couple of questions for you. Okay. I just didn't see significant discussion in the administrative law judge's decision about the December 2001 hearing. And I couldn't understand why not, because it looked real significant. And that decision says she had a nervous breakdown in 1994, and then it says, this is findings of fact, she complained of consistent harassment from tenants living upstairs in her apartment complex and they follow her room to room making noise, et cetera. They make her life miserable because she cannot stay in the apartment when they are in the apartment. She does not complain of any face-to-face confrontations and believes that these people are in some conspiracy with the landlord. And then it goes on and it says she has a documented history of schizoaffective disorder. There was psychiatric hospitalization for suicidal ideation and depression. And she's had much sensitivity to psychotropic medications, mental status, labile, paranoid. None of that is reflected in the decision that's before us. And since it's not explained away, is there any inference I can draw except that it was overlooked? No, Your Honor, it was not overlooked. The essence of the question really is, was the claimant performing substantial gainful activity at the time? That is the first step in the disability evaluation process. And the adjudication officer in the December 2001 hearing wasn't looking at that issue. I'm not sure, but I believe the claimant reported that she was. Well, the subsequent one, though, in the decision that's challenged today was looking at whether she was schizophrenic as one of the elements. And he said whatever mental problems she has is mild, she said. And he agreed with the ‑‑ I don't know if you'd call him a psychiatrist. When he signed, he said he was board eligible, but he's not board certified in psychiatry. And he said, without having looked at the records, no suicidal ideation and no delusions, no hallucinations. And that was before the subsequent officer. Right. The issue of claimant's mental impairment was before the ALJ. Why don't we have a discussion of that? I'm sorry, a discussion of the ‑‑ Because claimant was doing substantial gainful activity, therefore she could not have been disabled under the act in December 2001. And once more medical evidence was gathered, for example, the ‑‑ So no matter what the medical evidence was, she could not have been treated as disabled. Exactly, Your Honor. I see. So I really don't follow that. So it's black or white. If you earn above a certain amount of money, even though you're schizophrenic and you keep getting fired and can't hold a job, you'll be deemed to not be disabled. That's this law? That's how it works? The question of substantial gainful activity isn't quite that black and white. Of course, there are other considerations. But the record shows that claimant was working. And, yes, she was working for temporary employment agencies. And, no, she was not working full time. But the record shows that, for example, in the month when she was informed that her benefits could be terminated, August 2000, she was working for the State of California and had reported earnings of $2,500 for that month. The statute is meant to provide disability benefits for people who cannot work. You answered a different question from the one that Judge Wardlaw asked. As I understood Judge Wardlaw's question, it was a legal one. Would substantial gainful activity bar disability no matter how insane she was? Yes, Your Honor. So it just doesn't matter that she was paranoid schizophrenic? If she was paranoid schizophrenic, which I think later ---- Let's assume for purposes of discussion that she's a paranoid schizophrenic who palms herself off and gets a job but quickly gets fired or laid off or not called back. Let's assume that for purposes of discussion, but that nevertheless she gets enough to get over the substantial gainful activity threshold, 200 a month or something like that. Can she be deemed disabled or not? She cannot. If she is performing substantial gainful activity, she is not disabled under the Act. Let me ask you something about waiver. Yes. I couldn't quite figure out why she should have realized that she wasn't disabled and should send back her money for the 2000 to 2002 period when an ALJ in 2001 said that basically she's crazy as a coot. She's disabled, and he found her disabled. In August of 2000, the agency had notified her that her work was substantial gainful activity and that the agency proposed ---- That is not what the letter says, and that's the problem I have with the government's position. We have a woman who's been diagnosed as mentally impaired, and you send her a letter that says, your client sends her a letter that says, it appears we will decide that your disability ended. It doesn't say you are now being cut off. This is August 2000. It says it twice in terms of what we plan to do. Based on the information we have, it appears we will decide. That's not saying we should not have paid you this money and you need to pay it back. It's not saying that clearly at all. And then the next letter that you send her, and this also goes to the fault issue, is September 21, 2002. So you've been paying her now for two years, right? And I don't know if the agency is just slow to get its act together, but then in September of 2002 it says, we now have decided you are no longer entitled. Not you wrongfully have kept all this money. And then on the overpayment information, the agency says, because we did not stop your checks until September 2002, you were paid $28,126 too much. And then it asks for a refund. But to me, it sounds like what the government is saying is it's our fault. We kept paying you even though it appeared that you weren't entitled. I don't see how you can say that she should have known from this correspondence that she wasn't entitled, especially given that she was mal-impaired, working only temp jobs and only part-time. You're telling her you should know how we define, how under the law substantial gainful activity is defined by us. These are the most cryptic letters I think I've read. You are correct, Your Honor. I did say that the agency proposed to terminate her benefits because working. But the agency's letter did explain that there had been a period under which a claimant could work and would still be entitled to benefits and that that period had ended. And that going forward, she would not be entitled if she was doing substantial gainful activity. And I believe the August 2000 notice did say that that meant if you were earning, I believe it was $500 a month before. I haven't read it. Let's see what it says. I thought they were just saying we're looking into it. And after we look into it, we find adversely you could be required to pay the money back. And then in the middle of the period when they were looking into it, the ALJ said you're disabled, made a finding of disability. So why should she have thought, oh, my gosh, I'm going to have to pay all the money back, because they're looking into whether I'm not disabled when they just said she is? I think those are really two separate issues. I don't know if they are. I mean, all the letters say is we're looking into it. Tell me what we're reviewing in terms of what did the ALJ find in terms of credibility? What are we reviewing and what's our standard of review on that? Because the ALJ did make some credibility findings against her. So tell me what those are. The ALJ found that Klamath was not credible for a couple of reasons. Number one, she didn't promptly inform the agency of her earnings. In several cases, it was more than a year before she informed the agency of her earnings. The agency basically had to ask her after the agency was notified through other means. And also because the evidence had shown that Klamath had good daily activities. She lived alone. She was able to run errands, shop, cook. She was able to do jobs in professional environments. And we were reviewing. The legal question is, as the district court said, in deciding whether a claimant is at fault, the agency looks at numerous factors, age, intelligence, limitations. And during this period, she had a diagnosis of disability. What is to tell? I mean, I didn't know until I got this case that you could be medically diagnosed as, say, schizophrenic, that if you worked over a certain or earned a certain amount of money, then you would be deemed to have, under the law, substantial gainful employment. Right, Your Honor. I mean, the whole thing seems kind of against policy to me because wouldn't it be a good thing if someone who actually had issues was trying to get back into the workforce and become a contributing member of society despite those kinds of issues? In fact, I think that's the policy behind the nine months of trial. Absolutely, Your Honor. The nine-month trial work period is supposed to be a period in which a person can try to readjust to the world of work and away from living on disability benefits. But that period had ended long ago. A claimant was initially found disabled in 1995. She began working in March of 1996, and she'd exhausted her trial work period by September of 1997. The agency wasn't aware of that because she had not reported those earnings. And in April of 1999, the agency began inquiring and asking her to report her earnings and, in fact, the work activity reports that she submitted in response to these notices. Does any of the mental condition matter to this case, or is the case decided by the fact that she made more than $200 a month for more than the nine-month trial period? They're both at issue here, Your Honor. One, the working goes to the overpayment, and her mental impairment goes to her current disability status, and the ALJ determined that the claimant's mental impairment. So the working goes to the overpayment, and that's where all she's got is the waiver issue. And the disability status, that is where we should look at the mental condition. Yes, Your Honor. Got it. Unless my colleagues have further questions, your time has expired. I just have one question. Did you try to mediate this case at all? I'm sorry, what was that, Your Honor? Did you take this case before mediation? Have you ever tried to mediate this case? Not as far as I know, Your Honor, but ‑‑ Because I'm just wondering about ability to repay, and it seems that this is something you might be able to work out, some of that. Of course, Your Honor, that is obviously a concern with such a large overpayment. I believe the August 2000 notice ‑‑ no, I'm sorry, the notice of overpayment did say that if she wasn't able to repay it in full. Just out of curiosity, how do you get 28 grand from a schizophrenic who occasionally makes 200 a month? Well, in fact, she occasionally made over 2,000 a month, but I think the only way would be to set up some kind of a plan. And that overpayment notice did say that they could come up with a plan which she could repay over time. But you haven't actually gotten together with the plaintiff's lawyer, the claimant's lawyer? You haven't really tried to work anything out yet, or have you? Well, as far as I understand, they're still contesting whether she should even have to overpay it, so we wouldn't be there yet. Yeah, right, but that's why you go to mediation or, you know, compromise and try to resolve issues. Yes, Your Honor. Okay. Thank you, counsel. Thank you.
judges: Kleinfeld, Wardlaw, Callahan